1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

9  JEFF N. ROSE,                                              Case No. 3:13-cv-00267-MMD-WGC

10                                      Petitioner,                          ORDER

11        v.

     ROBERT LEGRAND, et al.,

12                                      Respondents.

13

14        This counseled first-amended petition for writ of habeas corpus pursuant to 28

15  U.S.C. § 2254 by state prisoner Jeff N. Rose is before the court for final disposition on

16  the merits of the remaining grounds (ECF No. 16). Respondents have answered the

17  petition (ECF No. 38), and Rose replied (ECF No. 41).

18  **I.      PROCEDURAL HISTORY AND BACKGROUND**

19        In January 2004, Rose represented himself at his first jury trial on charges of sexual

20  assault and lewdness with a child under fourteen (exhibits 53, 54 to first amended

21  petition).[1] The jury found petitioner not guilty of counts 1-25 and 66. (Exh. 56.) The court

22  declared a mistrial on counts 26-65. The court set a new trial date, and counsel was

23  appointed to represent petitioner. (Exh. 55.)

24        On May 13, 2004, petitioner was charged in an amended information with a total

25  of forty counts. (Exh. 63.) Trial took place in August 2004. (Exhs. 82, 85, 86, 89, 95.) The

26  jury found petitioner guilty of counts 1-10 (sexual assault of a minor under fourteen years

27

28        [1]Exhibits referenced in this order are exhibits to the amended petition, ECF No.
     16, and are found at ECF Nos. 17-26.

of age, victim C.C.) and counts 21-30 (sexual assault with a minor under fourteen years of age, victim C.C.), and not guilty of counts 11-20 (lewdness with minor under the age of fourteen, victim C.C.) and counts 31-40 (lewdness with minor under age of fourteen, victim A.C.). (Exh. 97.)

The court imposed the following sentences: twenty years to life, a consecutive twenty years to life, and 18 twenty to life sentences, to run concurrently. (Exh. 106.) If petitioner is released on parole he will be subject to lifetime supervision and required to register as a sex offender. (*Id.*) Judgment of conviction was entered on November 17, 2004. (*Id.*)

The Nevada Supreme Court affirmed the denial of petitioner's direct appeal in a published opinion on July 26, 2007. (Exh. 126.) The Nevada Supreme Court considered petitioner's briefing as well as *amicus curiae* briefing and denied petitioner's petition for rehearing and petition for *en banc* reconsideration. (Exhs. 127, 131, 133, 134, 139, 141, 142.) The United States Supreme Court denied the petitioner a *writ of certiorari* on October 6, 2008. (Exh. 145.)

Petitioner filed a proper person state postconviction petition for writ of habeas corpus, which the state district court denied. (Exhs. 153, 154.) The Nevada Supreme Court reversed and remanded on March 10, 2010, remanding the case to state district court for appointment of counsel. (Exh. 160.)

On November 5, 2010, petitioner filed a counseled state postconviction petition. (Exh. 164.) The state district court held a hearing and then denied the petition. (Exh. 171.) The Nevada Supreme Court affirmed the denial of the petition on May 13, 2013, and remittitur issued on June 7, 2013. (Exhs. 182, 187.)

Petitioner dispatched his federal habeas corpus petition on May 20, 2013. (ECF No. 1.) On May 12, 2015, this Court granted in part respondents' motion to dismiss several grounds in the counseled amended petition. (ECF No. 32.) The Court now considers the merits of the remaining grounds.

///

2

## II.   LEGAL STANDARD - AEDPA

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

*Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

///

///

4

### III.   THE INSTANT PETITION

#### A.   Claims other than Ineffective Assistance of Counsel

##### 1.   Ground 1

Rose alleges that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to present a defense, cross examine witnesses, due process, and a fair trial when it prevented him from presenting his defense. (ECF No. 16 at 8-14). Rose states the following: he represented himself at his first trial, and all four accusers testified. The testimony of two accusers was contradicted by testimony of other witnesses, and the jury found Rose not guilty of all charges related to those two accusers. One of those two had been molested when she was younger. Those two accusers testified that all four girls had discussed the molestation before any of the girls came forward, which contradicted A.C. and C.C.'s testimony that they had not discussed it amongst themselves. The jury was unable to reach a verdict as to A.C. and C.C., and the judge declared a mistrial. (*Id.*)

The State then filed an amended information charging Rose only as to A.C. and C.C. Immediately before the second trial, at which Rose was represented by counsel, the prosecutor made an oral motion to bar Rose's defense. The new trial judge ruled that no evidence of any other accusers would be admitted at the second trial. The defense offered a written offer of proof describing the testimony of the witnesses that the court had precluded, including an expert witness; the court did not change its ruling. Rose was convicted of the sexual assault charges as to C.C., acquitted of the lewdness charges as to C.C., and acquitted of all charges as to A.C. (*Id.*)

The Constitution guarantees a criminal defendant a "meaningful opportunity to present a complete defense," and to introduce relevant evidence on his behalf. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, this right is subject to reasonable restrictions "to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted). States have "broad latitude" in establishing rules of evidence, which may result in the exclusion of evidence in criminal trials. *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam).

"The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading of the jury. *See Scheffer,* 523 U.S. at 308; *see also Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996). The trial judge is entitled to broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate. *Scheffer*, 523 U.S. at 308. Even where the exclusion of evidence violates a defendant's constitutional rights, habeas relief is only appropriate if the excluded evidence had a "substantial and injurious effect" on the verdict. *See Brecht v. Abrahamson*, 507 U.S 619, 637 (1993).

The Nevada Supreme Court explained its denial of this claim:

> We also reject Rose's argument that the district court violated his due process right to a fair trial when it excluded evidence offered to support his theory that the victims had fabricated the allegations and to impeach the victims regarding statement they had made to police. Although a criminal defendant has a due process right to "introduce into evidence any testimony or documentation which would tend to prove the defendant's theory of the case," *Vipperman v. State*, 96 Nev. 592, 596, 614 P.2d 532, 534 (1980), that right is subject to the rules of evidence, including the rules that evidence must be relevant, and that even relevant evidence is inadmissible if its probative value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury," NRS 48.035(1). *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Jackson v. State*, 116 Nev. 334, 335, 997 P.2d 121, 121 (2000); *Brown v. State*, 107 Nev. 164, 167, 807 P.2d 1379, 1381 (1991); *Vipperman*, 96 Nev. at 586, 614 P.2d at 534. Having considered the record, we conclude that the district court did not abuse its discretion in concluding that to the extent that Rose's proffered evidence was relevant, it was inadmissible as it would unduly confuse the issues or mislead the jury. *See Jones v. State*, 113 Nev. 454, 466-67, 937 P.2d 55, 63 (1997) (stating that district court has discretion to admit or exclude evidence and that decision is reviewed for manifest error).

(Exh. 126 at 13-14 n.18.)

Immediately prior to the start of trial, the State moved for a pre-trial ruling that the defense could not comment in opening statements nor cross examine the two other victims about the not-guilty verdicts with respect to those victims at the first trial. (Exh. 85 ///

at 3.) After arguments by both sides, the trial court took a brief recess, then returned and ruled as follows:

> I find there is marginal relevance to the information regarding [other alleged victim, D] and the other trial and the other victims, but I also find that under 48.035 that it's more – it's – the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
>
> I am not in any way, shape, or form going to allow you to bring up evidence of another trial, evidence of other victims. This case is going to stand on its own with regards to the two victims in this case. So neither the State nor the defense is going to be able to bring in any evidence of any prior trial, any acquittal, any other victims. The two girls . . . in this case, it's going to stand on its own.
>
> If you deliberately — if there's any deliberateness as to bringing that out, there'll be sanctions from the Court.
>
> That's my ruling. We're not briefing it. And we're moving forward with the trial.

*(Id.* at 22.)

The trial court heard extensive argument regarding the allegations by the other two accusers from the first trial and repeatedly expressed concern about the myriad ways that introduction of the testimony, the fact of the acquittals, etc., were highly likely to lead to confusion by the jury. (Exh. 85 at 2-22.) Having reviewed the state-court record, this Court is not persuaded that Rose has met his burden of demonstrating that the Nevada Supreme Court's decision that the district court did not abuse its discretion in barring reference to the other two accusers was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 1.

### 2. Ground 2

Rose argues that the State introduced statements he made to a polygrapher in violation of his Fifth, Sixth and Fourteenth Amendment rights to due process, a fair trial and cross examination. (ECF No. 16 at 14-22.) Rose contends that the statements were misleading, unfairly prejudicial and involuntary. He asserts that he was denied a complete

///

pre-trial hearing on the voluntariness of the statements and an opportunity to cross examine Moore at that hearing. (*Id.*)

In order to warrant federal habeas relief with respect to a state court's evidentiary ruling, a decision to admit evidence must be so prejudicial that such admission violated fundamental due process and the right to a fair trial. *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008).

In rejecting this claim, the Nevada Supreme Court first recounted trial testimony:

> The State also presented evidence regarding statements Rose made during an interview with Gordon Moore, an investigator with the Nevada Division of Investigations, shortly after the initial allegations were reported in July 2002. Moore testified that the interview focused on C.C.'s allegations because she had provided the clearest and most detailed descriptions of what Rose had done. Rose indicated to Moore that he was scared, and he denied the allegations. Moore testified that in his experience interviewing individuals accused of sexual abuse, such denials were not uncommon, and he therefore continued with the interview. During the course of the interview, Rose eventually offered possible explanations for C.C.'s accusations. In particular, Rose discussed with Moore two incidents that might explain C.C.'s accusations.

> Moore conducted a polygraph examination that Rose voluntarily agreed to take. The fact that Rose had submitted to a polygraph examination and the results of the examination were not admitted as evidence at the trial. However, a transcript of the interview conducted as part of the examination was admitted at trial, along with Moore's testimony about statements that Rose made to him.

> The first incident involved Rose putting powder on C.C.'s genital area at her request. According to Moore, Rose explained that on that particular occasion, C.C. and [Rose's daughter] J.R. called into J.R.'s room after they had been swimming and he entered the room to find them lying naked on J.R.'s bed. J.R. complained of a rash on her genital area and asked Rose to put powder on the rash. C.C. then asked Rose to do the same to her. Rose indicated that he was reluctant to do so because C.C. was not his daughter, but C.C. persisted and so he complied. Rose initially indicated that he sprinkled the powder on C.C. without touching her, but he later indicated in response to Moore's questions that he may have touched her while applying the powder. Rose commented that he felt dirty about the incident because C.C. was not his daughter.

> The second incident involved C.C. climbing into Rose's bed while he was asleep and rubbing her vagina on his hand. According to Moore, Rose explained that C.C. and J.R. were asleep at the end of his bed when he woke up to find that C.C. had climbed in bed with him and was rubbing her vagina against his hand. He explained that when he realized what was happening he pulled his hand away and told C.C. to get out of the bed and sleep on the floor.

8

Despite Rose's statements about these two incidents, Moore acknowledged that Rose continuously and adamantly stated that he never touched C.C. with sexual intent. It appears that neither of the incidents described by Rose formed the basis for the charges against him. And J.R. and C.C. denied that either incident ever occurred. Additionally, shortly after his interview with Moore, Rose told Las Vegas Metropolitan Police Detective Kristin Meegan that he should not have made the statement about the second incident. At trial, Rose denied that either incident he described to Moore ever occurred, claiming that he made them up to satisfy Moore and to get Moore off of his back. The district court also admitted Rose's testimony from the first trial in which he denied making the statements to Moore.

Rose testified at trial and generally denied all of the allegations. He also testified that in September 2001 he joined the Navy and was not in Las Vegas. He further testified that he did not return to Las Vegas until he was medically discharged in March 2002 after he fractured his leg.

(Exh. 126 at 6-7.)

The Nevada Supreme Court thereafter denied the claim:

Rose further argues that his due process rights were violated when the State introduced Gordon Moore's testimony that Rose told him about putting powder on J.R.'s and C.C.'s vaginas and about C.C. climbing into bed with him. Specifically, Rose argues that his rights were violated because (1) Moore's testimony was more prejudicial than probative, (2) the evidence amounted to prior bad acts, but the district court did not conduct a *Petrocelli* hearing, (3) the district court refused to allow Rose to cross-examine Moore at the suppression hearing, (4) the district court violated constitutional procedure by ruling on Rose's suppression motion before the hearing had been completed, and (5) the State committed prosecutorial misconduct by using the evidence while cross-examining Rose. We have considered these issues and conclude that they lack merit.

(Exh. 126, at 15 n.23.)

The trial judge that presided over the first trial conducted a hearing with respect to the voluntariness of Rose's statements to Moore. (Exh. 78.) The court halted the hearing and expressed frustration that the State did not have the audio recording of the end of the interview between Moore and Rose. The court directed the State to try again to locate the tape, indicated that it could not rule on the motion without the tape, and sent the case to the overflow calendar. At a calendar call hearing a few days later, the presiding judge indicated that he had sought a ruling from the original judge with respect to the motion to suppress Rose's statements to Moore. (Exh. 81 at 2-4.) He stated that the original judge indicated that even though she had told the parties that she was not making a ruling at

that point in the hearing without further search for the missing tape, having taken the matter under advisement, she decided to deny the motion based on the hearing that she had conducted. (*Id.*)

It is understandable that the defense would be frustrated with the manner in which the hearing recounted above unfolded. However, Rose did receive a hearing on the voluntariness of the statements. Further, at the outset of the interview, Moore read Rose his rights under *Miranda* and Rose signed a form indicating that he had been read and understood his *Miranda* rights. (Exh. 86 at 80.) Rose's false statements to Moore were relevant and admissible to demonstrate that Rose fabricated incidents to try to explain the victims' allegations. Rose has not shown that the trial court's evidentiary ruling with respect to the interview with Moore so was so prejudicial that such admission violated fundamental due process and the right to a fair trial. Rose simply has not met his burden of demonstrating that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Federal habeas relief is therefore denied as to ground 2.

### 3.   Ground 3

Rose contends that the trial court denied a motion for a continuance to permit the defense to review a tape and transcript of the interview with Moore that the defense received just before the second trial started in violation of his Fourteenth Amendment due process and fair trial rights. (ECF No. 16 at 22.)

Whether to grant a continuance is within the trial court's discretion, and not every denial of a continuance violates due process "even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*; *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

///

10

1    Denying this claim, the Nevada Supreme Court explained:

2        This court reviews the district court's decision regarding a motion for
3    continuance for an abuse of discretion. *See Mulder v. State*, 992 P.2d 845,
     850-50 (Nev. 2000). We have previously held that the district court abused
4    its discretion by denying a defendant's request for a modest continuance to
     procure witnesses when the delay was not the defendant's fault. *Lord v.*
5    *State*, 806 P.2d 548, 556 (Nev. 1991). However, when a defendant fails to
     demonstrate that he was prejudiced by the denial of a continuance, the
6    district court's decision denying a continuance is not an abuse of discretion.
     *Mulder*, 992 P.2d at 850.

7        Here, Rose had at least a partial audiotape of the interview, a
     complete transcript, and Moore's notes before the first trial. He has not
8    demonstrated that he was prejudiced by the district court's refusal to grant
     a continuance. *Cf. Beasley v. State*, 404 P.2d 911 (Nev. 1965). Accordingly,
9    we conclude that the district court did not abuse its discretion in denying the
     motion for a continuance. [FN omitted]
10

11   (Exh. 126 at 13-14.)

12        Immediately prior to the start of the trial, defense counsel moved for a continuance,

13   explaining that the third tape from the Moore interviewed had finally been located and

14   only given to him the previous night after 5 p.m. (Exh. 82 at 5-7.) At the hearing, the State

15   noted that the defense was familiar with the interview and had long possessed transcripts

16   of portions of the interview as well as Moore's notes. (*Id.* at 11-12, 21-22.) The court

17   inquired of the parties as to when defense counsel would be given a transcript of the

18   portion of the tape the defense had not heard. (*Id.* at 20.) The court pointed out that it was

19   Tuesday and Moore would be called to testify toward the end of the week. The court

20   reasoned that the defense would have plenty of time to review the transcript before Moore

21   testified and denied the continuance. (*Id.*)

22        Rose complains here that the defense did not have sufficient time to listen to the

23   tape and that the transcript of the tape was incomplete and failed to reflect that Moore

24   pressured Rose to such an extent that his statements were involuntary. (ECF Nos. 16; 41

25   at 18-24.) However, the jury heard Rose's testimony that he was innocent of the charges

26   and that he was under extreme pressure and fabricated two incidents out of fear. (Exh.

27   95 at 81, 93,135-138.) Rose has failed to show that the Nevada Supreme Court's

28   determination that he failed to show prejudice from the failure to grant a continuance was

contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, ground 3 is denied.

### 4.     Ground 4

Rose claims that his Fifth, Sixth and Fourteenth Amendment due process and fair trial rights were violated when the State introduced statements that Rose made to Moore, a polygrapher, and allowed Moore to testify to Rose's truthfulness. (ECF No. 16 at 24.)

The Nevada Supreme Court denied the claim, reasoning:

> Rose argues that the district court abused its discretion by denying his motion for a mistrial after Moore mentioned the word "polygraph" in describing his training and experience. Rose argues that a mistrial was warranted because the testimony about Moore's training amounted to improper admission of polygraph evidence. We disagree.
>
> The district court has discretion to deny a motion for a mistrial, and this court will not reverse the district court's decision "'absent a clear showing of abuse.'" Polygraph evidence is inadmissible unless the State, defendant, and defendant's counsel have executed a stipulation providing for the defendant's submission to the polygraph examination. However, "'[a] witness's spontaneous or inadvertent references to inadmissible material, not solicited by the prosecution, can be cured by an immediate admonishment directing the jury to disregard the statement.'"
>
> Here, during the State's questioning of Moore, Rose asked for a foundation for Moore's expert opinion on interviewing suspects, and the district court ordered the State to question Moore about his qualifications. Moore then mentioned the word "polygraph" when describing his training and experience. Rose objected, and the district court specifically admonished the jury to disregard the statement. Moore did not make any mention of the fact that he gave Rose a polygraph test or testify as to the results of any polygraph test. Under these circumstances, we conclude that the admonishment was sufficient to cure any prejudice and therefore the district court did not abuse its discretion by denying Rose's motion for a mistrial.

(Exh. 126 at 15-16.)

At trial, the following occurred during the State's direct examination of Moore:

> Q: Now, in regards to these interviews, Mr. Moore, did you notice some similar patterns that you had seen in the past in regards to other subjects that you saw in Mr. Rose?
>
> DEFENSE COUNSEL: Objection, Judge. If he's going to testify to similar patterns, we simply don't have a substantial enough foundation for that. He's not an expert into – in looking at other people's patterns and making a nexus with Mr. Rose. This is — this is completely off the mark and he does

not have a sufficient foundation, we do not have sufficient expert training show that would allow him to make that kind of opinion.

THE COURT: Mr. —

STATE: I guess I could go back through all of his training, if . . . .

THE COURT: Why don't you do that for us . . . .

STATE Q: All right, Mr. Moore, let's go back through this then. What type of particular training have you received, specifically in regards to interviewing subjects, or suspects?

A: I've attended numerous federal and state, local level, seminars, conferences, specifically on the federal level with the Department of Defense Polygraph uh, Institute –

DEFENSE COUNSEL: May we approach, Judge.

(Exh. 86 at 87-88.) As set forth above, Moore only made a fleeting reference to a polygraph institute as he described his training as an investigator. Respondents note that no evidence was introduced that Moore was a polygrapher or that he conducted a polygraph examination of Rose. The jury was instructed that it may draw reasonable inferences from the evidence presented but that such inferences should not be based on speculation or guess. (Exh. 96, jury instruction no. 15.) The Court concludes that Rose has not shown that the Nevada Supreme Court's determination that the district court did not err in denying the motion for a mistrial was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, federal ground 4 is denied.

### 5.    Ground 5

Rose argues that the evidence was not specific enough to support a conviction in violation of his Fourteenth Amendment due process rights. (ECF No. 16 at 25.)

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact

13

could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On habeas review, this Court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

The Nevada Supreme Court rejected this claim on appeal, reasoning:

When considering the sufficiency of the evidence in sexual assault cases, we have held that the victim's testimony alone is sufficient to uphold a conviction. *LaPierre v. State*, 836 P.2d 56, 58 (1992). Although the victim's testimony need not be corroborated, we have held that "the victim must testify with some particularity regarding the incident in order to uphold the charge." *Id.* In evaluating whether a child-victim's uncorroborated testimony was sufficient to support multiple charges in *LaPierre v. State*, we acknowledged that "child victims are often unable to articulate specific times of events" and have difficulty recalling "exact instances when the abuse occurs repeatedly over a period of time." *Id.* Accordingly, we explained in LaPierre that to support multiple charges of sexual abuse over a period of time, a child victim need not "specify exact numbers of incidents, but there must be some reliable indicia that the number of acts charged actually occurred." *Id.*

In looking at the child-victim's testimony in *LaPierre*, this court determined that the child victim testified with sufficient particularity to support five of the ten charged incidents, as she described in general terms when or where those incidents occurred. *Id.* at 57. However, this court further determined that the child-victim's testimony lacked particularity as to the remaining five charges. Specifically, when the child victim was asked how many times the defendant assaulted her, she responded that it was "'[t]en or more times'" and that she knew it was that many because he was doing it up until he left.'" *Id.* And she later testified that she was not "absolutely sure" how many times it happened and that was why she had said "ten or more times." *Id.* This court described the testimony as "speculation" and "conjecture" regarding the number of incidents and concluded that "[s]omething more is required." *Id.* at 58. In particular, this court opined that the case "might" be different if the child victim had testified that the defendant had assaulted her "every weekend for the period of time [he] resided in the family home or that he assaulted her nearly every weekend." *Id.* But because the child-victim's testimony was more speculative, this court reversed five of the convictions for insufficient evidence.

In this case, the State charged Rose with twenty counts of sexual assault. C.C. and others testified that from late 1999 to July 2002, she spent at least one night at the Roses' house almost every weekend. C.C. testified that Rose touched her nearly every time she spent the night. The only times

14

he did not touch her were when he was away in the Navy from September 2001 to March 2002. Although she could not specify an exact number of incidents, she testified that he touched her vagina with his fingers more than ten times and with his tongue more than ten times. She described different locations where she was touched and graphically detailed his actions. She recalled seeing the time on the clock when he assaulted her in certain rooms, and she described how she sometimes tried to fight him off and how he would flip her over if she was on her stomach.

The victim's testimony in this case is distinguishable from that of the victim in *LaPierre*. C.C. definitively testified that Rose assaulted her nearly every time she spent the night at his house before and after he was away in the Navy and that she spent the night at his house almost every weekend during that time. This is the kind of testimony that we opined "might" have made a difference in *LaPierre*. Faced with such testimony here, we conclude it is sufficient. Taking the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charged sexual assaults beyond a reasonable doubt. Accordingly, Rose's conviction was supported by sufficient evidence.

(Exh. 126 at 8-11.)

At trial, C.C. testified to the following: she and/or she and her little sister spent the night at the Roses' house nearly once every weekend. She described with particularity the manner in which Rose touched her vagina with his fingers or tongue nearly every time she stayed over, including what she usually wore, what rooms she slept in, the usual time of night, that sometimes she would try to fight him off by kicking at him or trying to stay on her stomach. (Exh. 86 at 13-34, 37, 40.)

Having reviewed the record, this Court concludes that it cannot be said that based upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 430 U.S. at 324. Thus, Rose has failed to demonstrate that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 5.

### 6.    Ground 7

Rose claims that the trial court's failure to record bench conferences violated his right to be present. (ECF No. 16 at 28.)

The constitutional right to be present largely arises from the Sixth Amendment Confrontation Clause, but a defendant also "has a due process right to be present at a

proceeding whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *U.S. v. Gagnon*, 470 U.S. 522, 526 (1985) (internal quotations and citations omitted); *see also Rushen v. Spain*, 464 U.S. 114, 125-126 (1983) (Stevens, J. concurring in the judgment: "[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication."). The fact that a defendant was excluded from a trial proceeding should be considered in light of the entire record. *Gagnon*, 470 U.S. at 526-527.

The Nevada Supreme Court denied this claim, explaining:

> A defendant must be present at every stage of his trial, including jury selection. NRS 178.388(1). A defendant's right to be present at jury selection arises from his due process right to a fair hearing. *Gallego v. State*, 23 P.3d 227, 240 (Nev. 2001). However, "'[t]he due process aspect has been recognized only to the extent that a fair and just hearing would be thwarted by the defendant's absence.'" *Id.* Violations of the right to be present are reviewed for harmless error. *Id.*
>
> In this case, the district court questioned four prospective jurors at the bench after they indicated that they could not be fair and impartial because they had previously been sexually assaulted or had friends or family that had been accused of sexual assault. The district court then dismissed them. The district court explained its reasoning for dismissing each juror and stated that it conducted individual voir dire at the bench because the issues were embarrassing and sensitive and the court did not want to taint the remainder of the jury pool. We conclude that Rose has not demonstrated that his absence from the bench conferences prejudiced him in any way. In particular, because the jurors were dismissed because they could not be fair and impartial to Rose, it appears the proceedings were fair and just despite his absence. *See id.*

(Exh. 126 at 17.)

The trial court record reflects the following:

> THE COURT: Okay. The jury panel has been excused, and I'm going to go ahead and put on the record regarding each of the information I received from the following people: Juror 200 was the last woman that I

16

excused. She came up to the bench and disclosed to me that her husband was recently accused by a next-door-neighbor of having inappropriate contact with her own daughter. There's also been allegations raised regarding the neighbor herself. They retained an attorney. She said that she, as a result of what had transpired, did not believe that she could be fair and impartial due to the nature of this case. I excused her.

Juror number 265 is not dismissed, but disclosed to me, outside the presence of the jury, that her boyfriend, or significant other, had been accused of rape five or six years ago. She also – she told me that the person making the accusations had mental health issues and had accused many others of similar conduct, and that the case was dismissed, and that she could be fair and impartial.

Juror number 209 was molested as a child and was excused.

Juror number 260, 206 and 277 also said that they were molested as children and needed to be excused. They showed visible agitation and disturbance as a result of being participating up to this point.

Juror number 284, I excused because he related to me that he had incest in his family. His father had molested a niece or had an incestuous relationship with a niece, and he watched how that impacted his mother. He said that it would bring up unhappy memories or disturbing memories, and that he couldn't be fair and impartial.

I think that covers all of the ones that have been excused for those reasons.

MS. HOFFMAN (defense counsel): Judge, for the record, the Defense lodged an objection at the bench, partially because as these at the bench conferences are going on with our jury pool the Defense and the State is not privy to anything that is said, and it's my understanding that there's not a record being taken of the conversation. We feel that this is a critical stage of the proceedings, that we have a right to be able to hear what the jurors say about whether they're able to be fair and impartial, and that we would also have an accompanying right to be able to voir dire in an attempt to rehabilitate witnesses. We can't do that if we can't hear what they're saying between Your Honor and the juror with all due respect and we'd object to this, and I'd like to record to reflect that.

. . .

THE COURT: And the record will certainly reflect that with all due respect, but there would be nothing to rehabilitate in front of the rest of the panel because they are not disclosing in front of everybody else that they have a particular issue that anybody else needs to hear about. And to save them the embarrassment and humiliation and the emotional portion of having to disclose this in front of all of the strangers that we have here in the courtroom, I take these folks up. I relay to you what their problems are after each one occurs. I tell you that I'm going to let them go because I believe it is discretionary on my part to let them go at this state as a result of what they disclosed to me. By not disclosing to the rest of the panel, I believe that that keeps that from tainting anybody else on this jury. And, so, your objection is noted. Thank you very much.

(Exh. 82 at 91-93.) The court subsequently brought some other jurors into the courtroom one at a time and permitted counsel to ask them questions. (*Id.* at 109-121.)

Here, Rose has made no showing that these *ex parte* exchanges between the judge and these jurors impacted his ability to fully defend himself and violated due process. While the initial conversations were *ex parte*, the judge then put the specifics of the conversations on the record and also permitted the parties to question subsequent jurors. The judge explained that she dismissed the four jurors because they had been sexually assaulted or had close family experience with sexual assault. It cannot be said that the judge's concern for the privacy of these potential jurors — all of whom were dismissed because the court had specific concerns that they could not be impartial and in fact might be biased against the defendant — prejudiced Rose in any manner. Nor does the record reflect that Rose had any objection to the jurors who were excused for cause by the court. Rose has failed to demonstrate that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 7.

**B.    Ground 9 Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687).

To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed ///

19

the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

As ground 9(A), Rose claims that trial counsel rendered ineffective assistance for failing to conduct proper investigation and pretrial preparation, namely that counsel should have had a medical expert testify about Rose's injuries and should have had Dr. Esplin testify. (ECF No. 16 at 31-32.)

The Nevada Supreme Court affirmed the denial of this claim in Rose's state postconviction petition, stating that many of the victim's allegations of sexual abuse predated Rose's broken hip and resultant physical limitations, and therefore, Rose failed to demonstrate prejudice. The state supreme court also pointed out that Rose failed to explain how counsel was deficient in failing to secure the attendance of expert witness Dr. Esplin at trial, or what counsel should have done differently, and therefore, Rose failed to demonstrate deficiency or prejudice. (Exh. 182 at 3 and n.1.)

Rose's wife testified as to how his injuries affected his daily life. (Exh. 89 at 32, 40-43, 45-46.) Rose also testified about how his injuries affected his daily life. (Exh. 95 at

104-107, 110-111, 134.) Further, respondents point out that Rose fails to show what Dr. Esplin — who was to testify that it was his opinion that the four accusers fabricated the allegations together — would have based his opinion upon on because the trial court had ruled that evidence of the other accusers and the previous acquittals would not be admitted.

As ground 9(B), Rose contends that trial counsel failed to seek a pretrial psychiatric evaluation of the victims. (ECF No. 16 at 32.)

Affirming the denial of this claim, the Nevada Supreme Court stated that Rose did not show that a psychological evaluation of the victims would have been appropriate, "as he did not show that the State benefited from a psychological expert or that there was a reasonable basis for believing that the victims' mental or emotional state may have affected their veracity." (Exh. 182 at 3-4.) The state supreme court thus concluded that Rose did not demonstrate a reasonable probability of a different outcome at trial had counsel sought a psychological evaluation of the victims. (*Id.*)

Here, Rose does not explain what a psychological evaluation would have revealed or show any reasonable probability that such an examination would have changed the outcome at trial.

In ground 9(C), Rose asserts that trial counsel was ineffective for failing to insist that the bench conferences be recorded because the conferences demonstrated "(1) the court's bias against the defendant; (2) the unpreparedness and ineffectiveness of defense counsel; and (3) the overzealousness and misconduct of the prosecution." (ECF No. 16, at 34-35.)

The Nevada Supreme Court affirmed the denial of the claim:

> [A]ppellant argues that trial counsel was ineffective for failing to ensure that all bench conferences and discussions were recorded. We conclude that appellant failed to demonstrate that he was prejudiced, as he has not identified any issues that this court was unable to meaningfully review due to the failure to record bench conferences. *See, Hargrove [v. State,]* 100 Nev. at 502, 686 P.2d at 255 (holding that "bare" or "naked" claims are insufficient to grant relief). To the extent that he claims that appellate review of jury selection was not possible, this claim is belied by the record, as this court concluded on direct appeal that appellant was not

21

1

2

3

4

> prejudiced by the unrecorded bench conferences during the jury selection process. *Rose v. State*, 123 Nev. 194, 207-08, 163 P.3d 408, 417 (2007). Furthermore, a review of the record shows that most of the unrecorded bench conferences during trial were explained on the record or pertained to housekeeping matters. Therefore, we conclude that the district court did not err in denying this claim.

5

6

(Exh. 182 at 4-5.) Rose presents no further facts to support ground 9(B), and this court concludes that it is belied by the record.

7

8

Rose next alleges in ground 9(D) that trial counsel's opening statement was ineffective because it was not clear, precise or organized. (ECF No. 16 at 34.)

9

The Nevada Supreme Court observed that

10

11

12

> [c]ounsel's opening statement set forth the theory of the defense and addressed evidence that would be presented at trial. Appellant has failed to specify what additional information counsel should have included in the opening statement, nor has he shown a reasonable probability that, but for counsel's error, the outcome of the trial would have been different.

13

(Exh. 182 at 5.)

14

15

16

17

18

19

The record reflects that during opening statements, defense counsel presented the defense theory of the case and stated that Rose has consistently denied the allegations. Counsel described some of the witnesses, emphasized that credibility will be important, and asked the jurors to take notes, ask tough questions and pay attention to the demeanor of witnesses. (Exh. 85 at 62-67.) Rose's contention that defense counsel failed to describe witnesses and evidence is, therefore, belied by the record.

20

21

In ground 9(E), Rose contends that trial counsel failed to challenge the trial court's bias. (ECF No. 16 at 34-35.)

22

Affirming the denial of this claim, the state supreme court reasoned:

23

24

25

26

27

28

> [A]ppellant argues that trial counsel was ineffective for failing to move to recuse Judge Jackie Glass for bias toward the defense. Appellant specifically contends that Judge Glass was biased because she excluded evidence offered to support appellant's theory that the victims had fabricated the allegations, denied his motion for a continuance, conducted unrecorded bench conferences, reprimanded defense counsel for asking leading questions of appellant, and made inappropriate statements at sentencing. We conclude that appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. Adverse rulings "during the course of official judicial proceedings do not establish legally cognizable

22

grounds for disqualification." *In re Petition to Recall Dunleavy*, 104 Nev. 784, 789, 769 P.2d 1271, 1275 (1988). Moreover, this court concluded on direct appeal that the district court did not abuse its discretion in excluding the evidence of fabricated allegations. *Rose*, 123 Nev. at 205 n.18, 163 P.3d at 415 n.18. Thus, a motion to recuse on this basis would have been futile. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006). As for the other challenged conduct and statements, appellant failed to demonstrate that Judge Glass closed her mind to the presentation of evidence, *see Cameron v. State,* 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998), or displayed "'a deep-seated favoritism or antagonism that would make fair judgment impossible,'" *Kirksey v. State*, 112 Nev. 980, 1007, 923 P.2d 1102, 1119 (1996) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Thus, we conclude that the district court did not err in denying this claim.

(Exh. 182 at. 5-6.)

During trial, the court admonished defense counsel about leading questions, getting into testimony about other possible victims, repetition of questions, and asking Rose to speculate. (Exh. 95 at 94, 96, 99, 102, 112, 121-122,133.) In response to the State's objection, the court also asked defense counsel to ask questions in a proper form. (*Id.* at 127.) During the same part of the trial, the court also overruled several of the State's objections and granted defense counsel's continuing objection to the State's numerous objections. (Exh. 95 at 108, 113, 125, 127-128, 132.) Overall, the record of the state proceedings reflects the trial court's frustration with both sides rather than bias against Rose. (*See, e.g.*, Exh. 95.)

In ground 9(F), Rose claims that trial counsel failed to object to the admission of Moore's interview, failed to properly object to and prevent Moore's testimony and failed to file a motion *in limine* to prevent Moore's improper speculations on Rose's credibility. (ECF No. 16 at 35.)

The Nevada Supreme Court affirmed the denial of this claim:

[A]ppellant argues that trial counsel was ineffective for failing to effectively prevent and cure a reference by State witness G. Moore to prejudicial polygraph evidence. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. Trial counsel objected and requested a mistrial when Moore mentioned the word "polygraph" in describing his training and experience. On direct appeal, this court concluded that the district court's admonishment to the jury cured any prejudice from this single "polygraph" reference and that a mistrial was not

23

warranted. Rose, 123 Nev. at 206-07, 163 P.3d at 416-17. Thus, we conclude that the district court did not err in denying this claim.

(Exh. 182 at 7.)

Trial counsel filed a successful motion for *in camera* review of Moore's personnel records and also filed a motion to suppress Rose's statements to Moore and to challenge the voluntariness of Rose's statements, which, as discussed above, the trial court denied. (Exhs. 69, 71, 66, 81.) Rose has not set forth what other steps trial counsel should have taken. Especially in light of the pretrial motions, Rose has not demonstrated a reasonable probability of a different outcome at trial.

Finally, in ground 9, as 9(G) Rose argues that trial counsel failed to object to prosecutorial misconduct. (ECF No. 16 at 35-36.)

Rejecting this claim, the Nevada Supreme Court reasoned:

> [A]ppellant argues that trial counsel was ineffective for failing to timely object to prosecutorial misconduct during closing argument. Specifically, he contends that the prosecutor improperly referred to him as a "predator," stated that defense counsel used "smoke screens and flat-out deception" and "is trying to fool you," and commented that the victims were "old enough to be believed, to be remembered, and to be given justice." Appellant challenged these comments on direct appeal and this court concluded that the comments were not prejudicial and thus did not amount to plain error. [citing, Rose v. State, 123 Nev. 194, 208-11, 163 P.3d 408, 417-19 (2007).] Although appellant appears to contend that his appellate rights were forfeited by counsel's failure to object, he offers no cogent argument as to how a different standard of review on appeal would have affected the outcome of either the trial or the appeal. Maresca v. State, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Thus, we conclude that the district court did not err in denying the claim.

(Exh. 182 at 7.)

Rose has not shown that this decision is contrary to or an unreasonable application of *Strickland*. On direct appeal, the Nevada Supreme Court determined that the above comments were improper but that none were prejudicial and therefore none constituted plain error. Even assuming, *arguendo*, that defense counsel was ineffective for failing to object to these improper comments, Rose cannot demonstrate that, but for counsel's failure to object during closing arguments, there is a reasonable probability of a different outcome at trial. As detailed above, the jury heard the two girls testify extensively. In fact,

the jury acquitted Rose of all charges as to A.C. C.C. testified with particularity as to specific acts that Rose committed. State investigator Moore testified about his interview with Rose, including about the incidents that Rose fabricated to try to explain the charges. Moreover, the jury heard Rose testify to his innocence and heard his explanation for fabricating incidents.

Rose has, therefore, failed to show that the Nevada Supreme Court's decision on any portion of federal ground 9 is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 9.

### C.   Ground 10 Cumulative Error

Rose argues that cumulative error warrants habeas relief. (ECF No. 16 at 36.) The Ninth Circuit has concluded that cumulative errors may warrant AEDPA relief if the errors taken together rise to a violation of the due process guarantee of fundamental fairness. *Parle v. Runnels*, 505 F.3d 922 (9th Cir. 2007).

On direct appeal, the state supreme court concluded:

> Rose argues that his conviction must be reversed because of cumulative error. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." If the defendant's fair trial rights are violated because of the cumulative effect of the errors, this court will reverse the conviction. The relevant factors to consider when deciding whether cumulative error requires reversal are "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." Although the crimes charged are serious, the State presented compelling evidence of Rose's guilt and the few errors that we have discussed are minor. We hold that there is no cumulative error warranting reversal.

(Exh. 126 at 22.) Further, the Nevada Supreme Court affirmed the denial of Rose's postconviction petition, including a claim of cumulative error: "because [Rose] failed to demonstrate multiple deficiencies, he failed to demonstrate cumulative error." (Exh. 182 at 8.)

This Court has denied habeas relief on the grounds set forth above. Having carefully reviewed the state-court record and the parties' arguments, this Court concludes

25

1  that Rose has not demonstrated any combination of errors that so infected the trial with

2  unfairness as to make his conviction a denial of his due process rights. Ground 10 is,

3  therefore, denied.

4      Accordingly, the petition is denied in its entirety.

5  **IV.    CERTIFICATE OF APPEALABILITY**

6      This is a final order adverse to the petitioner. As such, Rule 11 of the Rules

7  Governing Section 2254 Cases requires this Court to issue or deny a certificate of

8  appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within

9  the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

10  *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

11      Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

12  "has made a substantial showing of the denial of a constitutional right." With respect to

13  claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would

14  find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

15  *v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

16  (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate

17  (1) whether the petition states a valid claim of the denial of a constitutional right and (2)

18  whether the court's procedural ruling was correct. *Id.*

19      Having reviewed its determinations and rulings in adjudicating Rose's petition, the

20  Court concludes that, pursuant to *Slack*, reasonable jurists could find its ruling on ground

21  2 to be debatable or wrong. The Court therefore will issue a certificate of appealability for

22  its resolution of ground 2 only.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## V.      CONCLUSION

It is therefore ordered that the first-amended petition (ECF No. 16) is denied in its entirety.

It is further ordered that a certificate of appealability is granted as to ground 2.

It is further ordered that the Clerk enter judgment accordingly and close this case.

DATED THIS 20th day of December 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE